## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| PAUL HOGENMILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:14CV4 RLW |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of

Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI")

under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the

Commissioner.

## I. Procedural History

On July 25, 2008, Plaintiff filed applications for DIB and SSI alleging disability

beginning June 30, 2008 due to breathing problems, high blood pressure, and a broken right arm.

(Tr. 108, 244-50, 358) The applications were denied, and Plaintiff filed a request for a hearing

before an Administrative Law Judge ("ALJ"). (Tr. 84-85, 108-14) On October 5, 2009, Plaintiff

appeared before an ALJ without counsel. (Tr. 32-45) Plaintiff retained an attorney and testified

at another hearing on March 15, 2010. (Tr. 46-59) On May 19, 2010, the ALJ determined that

Plaintiff had not been under a disability from June 30, 2008, through the date of the decision.

(Tr. 89-96) Plaintiff then filed a request for review, and on July 21, 2011, the Appeals Council

remanded the case to the ALJ for further consideration. (Tr. 100) Following a remand hearing

held on June 14, 2012, a different ALJ also found that Plaintiff was not under a disability at any time through June 30, 2008 or through the date of the decision. (Tr. 12-26, 65-83) On November 18, 2013, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the October 5, 2009 hearing, Plaintiff testified that he was treated by Dr. Berg for congestive heart failure and a kidney deficiency. Another doctor had indicated that sleep apnea could be the cause of Plaintiff's congestive heart failure. Plaintiff testified that he played up to three shows a month as a musician, but that he could not do what he used to do and needed people to help carry his equipment. The ALJ recommended that Plaintiff find an attorney. (Tr. 34-44)

Plaintiff appeared at a subsequent hearing with counsel on March 15, 2010. He testified that he was self-employed as a musician. He played guitar, harmonica, fiddle, and he also sang. He required help setting up and lifting heavy items. He further stated that his conditions caused a lack of energy, and his right arm that he previously broke did not work as it did before. His arm ached, and Plaintiff believed that doctors set it wrong because his arm was still crooked. Plaintiff also had congestive heart failure, high blood pressure, depression, and borderline diabetes. Before the accident, he experienced sleep problems and dizziness when walking to the mailbox. He also had decreased appetite. Plaintiff continued to experience dizziness and sleep problems after the accident. He used a CPAP machine to help with sleep. He'd always dealt with depression, and medication helped but did not alleviate the symptoms. His symptoms included feeling gloomy, sleeping too much, and lack of energy. (Tr. 48-58)

2

At the June 14, 2012 remand hearing, Plaintiff was again represented by counsel.

Plaintiff testified that he resided in Sainte Genevieve, Missouri with his mother. He weighed 319 pounds and measured 5 feet 6 inches. Plaintiff did not have medical insurance. He worked as a musician over the past 15 years. He currently performed one show per month. He made $4,000 in 2011 and maybe $5,000 in 2010. Plaintiff could not afford all of his expenses, which is why he lived with his mother. He also needed to purchase items for his shows. His shows lasted about 3 to 4 hours, and he performed 45 minutes at a time, with a 15 minute break between sessions. His job required him to lift and carry speakers and amplifiers. He tried to get people to help him but sometimes had to lift things himself. Plaintiff testified that lifting caused problems in his back and legs, which he felt the next day. (Tr. 68-71)

He stated that he was injured in a car accident in July of 2008. He broke his right wrist, which was still crooked. Plaintiff continued to experience pain, discomfort, and limitations. The pain was consistent but worse in bad weather. Playing the guitar increased the pain, and he was unable to play properly due to aches and stiffness. Plaintiff also testified regarding pain and limitations in his back and his legs. The pain was consistent in his lower back and he had difficulty standing and sitting straight. Any activities such as walking increased the pain and limitations. The day after a show, Plaintiff was in bed all day. With regard to his legs, Plaintiff testified that they were weak from the knees down. Both knee joints sometimes popped, locked up, or gave out. Plaintiff also experienced problems breathing and sleeping. He became heavy winded just walking across a room. Dr. Berg tested Plaintiff's oxygen levels, which were normal. However, Plaintiff stated that Dr. Berg did place lifting restrictions on Plaintiff. (Tr. 71-75)

3

Plaintiff further testified that he was diagnosed with diabetes. He could no longer eat whatever he wanted. Other symptoms included falling asleep after he ate. He attributed his fatigue to either diabetes or blood pressure. He no longer tested his blood sugars because he was unable to afford the testing supplies. He went to Dr. Berg every three months to have his blood sugar levels tested. In addition, Dr. Berg referred Plaintiff to a psychiatrist, but Plaintiff did not keep his appointment. Plaintiff explained that he believed doctors were conning him because he already knew he was depressed due to his money and health situations. Plaintiff took Prozac but was unsure whether it helped. Plaintiff was also diagnosed with sleep apnea. He used a cpap every night, which was uncomfortable but helped him sleep. (Tr. 75-78)

Plaintiff stated that he performed chores, which included mowing the lawn on a riding mower. He also did laundry, prepared meals, and took out the trash. Plaintiff was able to grocery shop, but he took his time. Plaintiff thought he could stand in one spot without leaning on anything for about 5 minutes. He had problems standing still and usually rocked from leg to leg because of his back and pressure on his feet. He could stand for a 45-minute performance, but he did not stand still and sometimes sat down. Plaintiff testified that he could not walk very far without losing his breath. He could only sit for about 10 to 15 minutes before needing to change positions due to back discomfort. Plaintiff slept about 8 or 9 hours a night and spent about 2 more hours lying down during the day. He did not qualify for Medicaid. (Tr. 78-82)

Plaintiff completed a Disability Report – Adult, indicating that he was 5 feet 6 inches tall and weighed 320 pounds. He reported breathing problems, high blood pressure, and broken right arm and stated that his accident and prior medical problems prevented him from working. (Tr. 350-57)

4

In a Function Report – Adult, Plaintiff stated that a typical day involved getting up, going to the restroom, and eating breakfast. He then washed the dishes and did laundry. He ran errands around town and sometimes repaired his musician equipment. Plaintiff made lunch, washed dishes, then he rested. After checking emails, he made dinner, washed dishes, and rested until bed time. Plaintiff previously was able to book shows and carry equipment. He was awake a lot during the night. Plaintiff reported that he could handle his personal care, prepare meals daily, and do laundry. He lived in an apartment that did not require yard work. He tried to get the mail every day but experienced chest pain and problems breathing. He could shop for groceries, household products, and necessities. Plaintiff enjoyed reading, watching TV, listening to music, and playing music if able. He socialized with friends and family via email and visits. Plaintiff further reported that his conditions affected his ability to lift, squat, bend, stand, reach, walk, kneel, stair climb, complete tasks, and use hands. He had problems standing due to breathing difficulties and performing too many physical activities. He was right-handed and believed he could walk 20 feet before needing to rest 5 to 10 minutes. He had no problems with paying attention, finishing what he started, following written instructions, following spoken instructions, or getting along with authority figures. He could handle stress and changes in a routine. (Tr. 361-68)

## III. Medical Evidence

On June 21, 2008, Dr. Dan Frissell treated Plaintiff for complaints of cough, chest congestion, and shortness of breath. Plaintiff also complained of fluid in lungs, stomach pain, and dizziness. Dr. Frissell noted that Plaintiff was uncomfortable with congestion and was overweight. He diagnosed cough, upper respiratory infection, acute sinusitis, hypertension, and

5

obesity. Dr. Frissell prescribed medication and advised Plaintiff to return in one week if he did not improve. (Tr. 412-16)

On July 18, 2008, Plaintiff presented to the Ste. Genevieve County Memorial Hospital Emergency Department after he ran off the road while driving 30 to 45 miles per hour. An x-ray of Plaintiff's right wrist showed a fracture of his distal radius. (Tr. 426-30)

On July 21, 2008, Scott VanNess, D.O., performed a closed reduction with manipulation of a right distal radius fracture. Dr. VanNess also observed a fairly significant blood pressure elevation and recommended that Plaintiff follow-up with his primary care physician for monitoring. (Tr. 425, 437)

On July 22, 2008, Plaintiff followed up with Dr. Frissell. Dr. Frissell noted that Plaintiff's blood pressure was elevated. Plaintiff complained of dizziness when getting up quickly, nausea, loss of appetite, and fatigue. He also complained of chest pain where the air bag hit, joint pain after the accident, and anxiety over his blood pressure and weight. He denied shortness of breath or urinary frequency. Dr. Frissell diagnosed hypertension, obesity, and fracture of the upper forearm. (Tr. 406-10)

On August 19, 2008, Plaintiff presented for treatment with Sanjay Sharma, D.O. He complained of pain in his stomach, swelling in his ankles and trouble breathing. Plaintiff reported that his legs had been swelling for the past year. Dr. Sharma assessed hypertension, peripheral edema, and obesity. (Tr. 484) Plaintiff returned to Dr. Sharma on August 26, 2008, and he added new onset diabetes and a renal impairment to his impressions. (Tr. 488)

Plaintiff was treated by Dr. Snehal Gandhi on September 10, 2008, at the request of Plaintiff's primary care physician because Plaintiff was unable to afford tests. Plaintiff reported an abrupt onset of shortness of breath about a year ago. He also had progressive weight gain and

6

hardening of the abdomen wall. Upon examination, Dr. Gandhi noted that Plaintiff appeared comfortable sitting up. Dr. Gandhi diagnosed obesity and edema of the legs and abdominal wall. (Tr. 463-64) Plaintiff returned to Dr. Gandhi on September 25, 2008, reporting continued shortness of breath, but improved activity capacity. Dr. Gandhi noted that Plaintiff's lower extremity and abdominal edema had decreased, and he assessed improved congestive heart failure. (Tr. 462)

On October 15, 2008, Plaintiff reported feeling much better. Dr. Ghandi noted that Plaintiff's chronic right-sided congestive heart failure was reaching maximum therapeutic efficacy. Plaintiff continued to have edema in his lower extremities. Gandhi recommended that Plaintiff wear leg hose for swelling. (Tr. 460) On November 17, 2008, Plaintiff reported that he had lost dietary motivation. Examination of Plaintiff's legs showed chronic brawny edema. Dr. Gandhi assessed congestive heart failure, fairly well compensated. He advised Plaintiff to watch his diet and continue his diuretics. (Tr. 458)

On February 23, 2009, Plaintiff returned to Dr. Gandhi and stated that he was well. He complained of periodic leg swelling, although Dr. Gandhi noted that Plaintiff's lower extremities were free of edema. Dr. Gandhi assessed metabolic syndrome and congestive heart failure. (Tr. 457) On March 23, 2009, Dr. Gandhi noted that Plaintiff had made significant therapeutic gains with Crestor. Plaintiff reported making dietary changes and increasing aerobic activity. Dr. Gandhi recommended an increase in Plaintiff's aerobic activity to one hour per day. (Tr. 455)

On July 21, 2009, Plaintiff began primary care treatment with Daniel Berg, M.D. Plaintiff reported that his swelling was much improved. Dr. Berg obtained a history from Plaintiff and refilled his medications. (Tr. 451)

On July 28, 2009, Plaintiff underwent an echocardiogram at St. Anthony's Medical Center. The views were limited due to Plaintiff's obesity. However, the report indicated that values were within normal range. (Tr. 477)

Plaintiff returned to Dr. Berg on September 2, 2009. Plaintiff reported feeling fine, and Dr. Berg noted no swelling in Plaintiff's ankles. Dr. Berg further noted that Plaintiff was scheduled for a sleep study, and if the study was negative, he would refer Plaintiff to cardiology. (Tr. 447)

On September 21, 2009, Plaintiff had an all-night polysomogram (sleep study) at the Washington University School of Medicine due to symptoms of snoring, witnessed apneas, gasping for air, and morning headaches. The results were abnormal, showing moderate obstructive sleep apnea syndrome. (Tr. 475) A follow-up polysomnogram on September 30, 2009 indicated that Plaintiff's moderate sleep apnea worsened to severe in REM and in supine sleep. The optimal C-PAP pressure for Plaintiff was 12 cm H20. (Tr. 527-28)

On October 6, 2009, Plaintiff saw Dr. Berg and indicated that he had undergone a sleep study and would be getting a C-PAP machine. Plaintiff also complained of occasional dull pain in the left side of his chest, associated with a fluttering sensation. Dr. Berg noted edema in Plaintiff's legs, as well as a flat affect. Dr. Berg assessed probable depression and recommended a trial of Prozac. Dr. Berg also noted that an echocardiogram had shown decreased systolic function. (Tr. 446)

Plaintiff saw Dr. Berg again on December 1, 2009. Plaintiff reported that his mood had been a little low, but he did not have shortness of breath or chest pains. Dr. Berg doubled Plaintiff's dosage of Prozac and also assessed low back pain. (Tr. 558)

8

Dr. Berg completed a physical medical source statement on December 1, 2009. Dr. Berg indicated diagnoses of congestive heart failure – diastolic dysfunction; chronic renal insufficiency; obstructive sleep apnea; diet controlled diabetes; low back pain; and depression. He opined that Plaintiff's balance was limited and that he sometimes felt dizzy. Dr. Berg believed that, at one time and without a break, Plaintiff could sit for 2 hours, stand for 60-90 minutes, and walk for 60-90 minutes. During an 8 hour workday, Plaintiff could sit for an unlimited amount of time, stand 3-5 hours, and walk about 2 hours. He could lift and carry up to 25 pounds occasionally and 2-5 pounds continuously. Additionally, Dr. Berg opined that Plaintiff could rarely stoop, crouch, crawl, or climb ladders or scaffolds. He could frequently reach above his head. Dr. Berg noted that Plaintiff could rarely tolerate odors or dust, or exposure to temperature or humidity extremes. Dr. Berg believed that Plaintiff was significantly limited in his ability to perform gross handling with his right hand, as well as reduced grip strength or pain upon gripping with his right hand due to a previous wrist fracture. Dr. Berg further opined that, based on Plaintiff' subjective complaints, Plaintiff's low back pain was a medically determinable impairment that could be expected to produce pain. He stated that this pain occurred daily, all day. Dr. Berg further stated that Plaintiff would not need to lie down or take a nap, but he needed to take hourly breaks every hour during an 8 hour workday. Dr. Berg opined that the above limitations had been present for twelve continuous months. (Tr. 544-47)

On February 1, 2010, Plaintiff reported depression and weight gain. He did not have edema. Dr. Berg increased Plaintiff's dosage of Prozac and noted that Plaintiff's hypertension was well controlled. (Tr. 603) On April 10, 2010, Plaintiff reported to Dr. Berg that he felt dizzy and nauseous for the previous three days, which was causing him to have problems with balance. Dr. Berg noted that Plaintiff had some mild dehydration. (Tr. 600)

9

On May 3, 2010, Plaintiff saw cardiologist Dr. James M. Perschbacher, who noted that Plaintiff had undergone a stress test, which was unremarkable. Plaintiff complained of occasional discomfort, which was random and not associated with exertion. He felt short of breath, likely due to increased weight. Overall, Plaintiff reported feeling fine. He had no lower extremity edema, and physical examination was normal. Dr. Perschbacher assessed shortness of breath, likely multi-factorial due to diastolic dysfunction as well as deconditioning. He also assessed hypertension, hyperlipidemia, and antiplatelet regimen. (Tr. 574-75)

Plaintiff returned to Dr. Berg on July 19, 2010. Plaintiff reported feeling okay, but he was upset that his disability application was denied. He did not have edema or shortness of breath, but he felt his conditions limited his ability to do work or exercise. He also noted feeling very tired after eating, which Dr. Berg believed was due to Plaintiff's diabetes. (Tr. 597) On November 8, 2010, Dr. Berg noted that Plaintiff had gained 21 pounds since his previous visit. Plaintiff reported that he ran out of medications due to lack of money. (Tr. 593)

On February 5, 2011, Dr. Berg noted that Plaintiff's diabetes was diet controlled until now and prescribed glipizide. (Tr. 591) Plaintiff returned to Dr. Berg on May 2, 2011, with complaints of low mood, general fatigue, and trouble with his knees. He reported no chest pain or discomfort and no dyspnea. He ran out of glipizide a week prior. He no longer wanted to take an anti-depressant, and he was not interested in counseling. Dr. Berg assessed chronic kidney disease Stage 3; congestive heart failure, New York Heart Association Class 2; essential hypertension, elevated today; obesity; type 2 diabetes mellitus, uncomplicated and controlled improved with glipizide; and obstructive sleep apnea using CPAP. (Tr. 587-89).

When Plaintiff returned to Dr. Berg on June 7, 2011, he complained that his right knee had been clicking, popping, and throbbing for the previous month or two. He also reported

10

missing his diabetes medications for 4 days and not being careful with his diet. Upon examination, Plaintiff was in no acute distress, but his knees exhibited abnormalities, with crepitus on the right. Dr. Berg noted that Plaintiff's hypertension was much better on medications. He added a diagnosis of osteoarthritis of the knee. (Tr. 583-84)

On August 29, 2011, Dr. Charles Mannis performed a consultative examination. Plaintiff complained of right wrist injury, back pain, and knee pain, right greater than left. Upon examination, Dr. Mannis noted that Plaintiff's stance and gait were normal. He had full range of motion of the cervical spine and up to 75 degrees flexion of the lumbar spine. Dr. Mannis also noted a slight radial deformity of the right wrist with radial deviation and prominence of the ulnar styloid. Dr. Mannis assessed limited range of motion in Plaintiff's right wrist and 4/5 grip strength of the right hand. Dr. Mannis diagnosed status post right distal radius fracture, chronic low back pain, and bilateral knee pain with possible mild arthritis, right greater than left. (Tr. 562-64, 571-72)

Dr. Mannis also completed a medical source statement, wherein he opined that Plaintiff could frequently lift or carry up to ten pounds, and occasionally lift or carry up to fifty pounds. Dr. Mannis stated that Plaintiff could sit for 4 hours, stand for 2 hours, and walk for 2 hours during an 8 hour workday. At one time, Plaintiff could sit for 30 minutes, stand for 20 minutes, and walk for 20 minutes. In addition, Plaintiff could frequently reach, handle, finger, feel, and push/pull with the right hand, as well as continuously perform these activities with the left hand. He could operate foot controls with both feet occasionally. Further, Dr. Mannis opined that Plaintiff could occasionally climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch; or crawl. He could occasionally tolerate exposure to unprotected heights, moving mechanical parts, and operation of a motor vehicle. Plaintiff was able to perform activities such

11

as shopping and preparing meals. Dr. Mannis was unable to determine when Plaintiff's limitations were first present. (Tr. 565-70)

Plaintiff followed up with Dr. Berg on November 8, 2011. He was generally okay but reported some congestion. Plaintiff reported sleeping better. However, he had been eating candy and not taking his medications, which he attributed to mild depression. Plaintiff had lost his medical insurance. Dr. Berg assessed essential hypertension; chronic kidney disease, stage 3, obesity, type 2 diabetes mellitus, uncomplicated and controlled; and obstructive sleep apnea. He suggested that Plaintiff see a counselor to help him with depression and motivational issues. Plaintiff was agreeable. (Tr. 579-82)

On December 7, 2011, Dr. Berg stated that he had not been trained to assess functional limitations associated with disability claims. He opined, however, that Plaintiff had a significant disability from his chronic medical problems such that he could not work. (Tr. 620) Plaintiff returned to Dr. Berg for medication refills on February 6, 2012. Plaintiff complained of problems with bladder control over the past 1-2 years. He also reported always being tired. Plaintiff had no swelling in his legs or chest pain, but examination revealed trace edema in the extremities. Plaintiff further reported that he could not walk more than 100 feet without feeling short of breath. Dr. Berg assessed congestive heart failure euvolemic, overflow incontinence, diabetes mellitus, fatigue, and obstructive sleep apnea. He prescribed medication for incontinence, in addition to other medications. (Tr. 614-17)

## IV. The ALJ's Determination

In a decision dated July 10, 2012, the ALJ thoroughly assessed the medical records, as well as Plaintiff's testimony and subjective complaints. The ALJ found that Plaintiff met the special earnings requirements of the Social Security Act as of June 30, 2008, his alleged onset

12

date, and continued to meet them through that date, but not thereafter. He had not engaged in substantial gainful activity since June 30, 2008, but he continued to work steadily as a musician. The ALJ further determined that Plaintiff had obesity, metabolic syndrome, diabetes mellitus, hypertension, hyperlipidemia, sleep apnea, probable mild osteoarthritis of his right knee, a history of two episodes of right-sided congestive heart failure, chronic kidney disease, and history of mild depression. However, no impairment or combination thereof met or equaled any impairment listed in Appendix 1, Subpart P, Regulations No. 4. The impairments were either not severe, or they were controlled or controllable by medication. (Tr. 15-25)

The ALJ found Plaintiff's allegation of impairment producing symptoms and limitations of sufficient severity to prevent the performance of any work activity was not credible. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 10 pounds frequently and 20 pounds occasionally. He was also limited to doing no more than occasional climbing, stooping, kneeling, crouching, crawling, or bending. The record did not establish mental or other nonexertional limitations such as in fingering, handling, reaching, or basic balancing. The ALJ found that Plaintiff's limitations did not prevent him from performing his past relevant work as an instrumental and vocal musician. Therefore, the ALJ concluded that Plaintiff was not under a disability at any time through June 30, 2008 or the date of the decision. (Tr. 25-26)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental

13

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints

14

regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.* at 1354.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski[1]* factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

---

[1] The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

15

Plaintiff raises two arguments in his Brief in Support of the Complaint. First, he claims that the ALJ erred by failing to find a severe medically determinable impairment related to Plaintiff's history of right wrist fracture. Second, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence because the ALJ failed to properly determine Plaintiff's RFC. Defendant responds that the ALJ properly determined that Plaintiff's history of right wrist fracture is not severe. Further, Defendant asserts that the ALJ properly determined Plaintiff's RFC by correctly assessing Plaintiff's subjective allegations and the credible medical evidence. Upon review of the record and the parties' briefs, the Court finds that substantial evidence supports the ALJ's determination, and the Commissioner's decision will be affirmed.

## A. Plaintiff's History of Right Wrist Fracture

Plaintiff argues that the ALJ erred in not finding that Plaintiff's history of right wrist fracture was a severe impairment. Plaintiff contends that two physicians assessed right hand and wrist limitations. Specifically, Plaintiff relies on Dr. Bert's 2009 opinion that Plaintiff was significantly limited in his ability to handle large objects with his right hand and that he had reduced grip strength and pain when gripping. (Tr. 546) Plaintiff also points to Dr. Mannis' 2011 opinion indicating reduced range of motion and grip strength, as well as only frequent use of the right hand to reach, handle, finger, feel, push, or pull. (Tr. 563, 567, 571) Defendant asserts that the ALJ properly determined that the history of right wrist fracture was not severe. The undersigned agrees with the Defendant.

Plaintiff has the burden of establishing that his impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007) (citations omitted). "Severity is not an onerous requirement for the claimant to meet, . . . , but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that

a claimant failed to make this showing." *Id.* at 708 (internal citation and citations omitted). Under the regulations, an impairment is not severe "if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Relevant to this case, basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b)(1). "An impairment or combination of impairments are not severe if they are so slight that it is unlikely that the claimant would be found disabled even if his age, education, and experience were taken into consideration." *Calhoun v. Astrue*, No. 1:10CV186MLM, 2012 WL 718622, at \*9 (E.D. Mo. March 6, 2012) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)).

With regard to Dr. Berg, the ALJ considered his opinion regarding Plaintiff's wrist limitations but properly discounted the opinion as inconsistent with other medical evidence and Dr. Berg's own treatment notes. (Tr. 21) "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted); *see also* SSR 96-2P, 1996 WL 374188 (July 2, 1996) ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). The ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz v. Barnhart*, 182 F. App'x 625, 626 (8th Cir. 2006). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08-5025-KES, 2009 WL 454930, at \*11 (D.S.D. Feb. 23, 2009) (citation

omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Here, Dr. Berg's treatment notes do not reflect complaints of wrist pain or limitations. Indeed, Dr. Berg did not perform any objective tests on Plaintiff's wrist that would support Dr. Berg's opinion of right wrist limitations. Because the opinion is void of any supporting medical tests and is inconsistent with treatment notes, the ALJ properly discounted this opinion. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000); *Goetz v. Barnhart*, 182 F. App'x 625, 626 (8th Cir. 2006). Additionally, Plaintiff was able to use his right hand to play guitar for work as a musician. "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (citation omitted).

Likewise, Dr. Mannis' opinion fails to demonstrate a severe impairment. The examination revealed slight flexion limitation and a slight decrease in grip strength. (Tr. 563, 571) Dr. Mannis opined that Plaintiff could frequently use his right hand for reaching, handling, fingering, feeling, pushing, and pulling. This opinion, in conjunction with Dr. Berg's treatment notes and Plaintiff's own allegations indicating an ability to use his right hand to play guitar and perform a wide range of physical activities involving the use of his right arm, indicates that his history of right wrist fracture has no more than a minimal impact on his ability to perform basic work activities. *Kirby,* 500 F.3d at 708. Therefore, the undersigned finds that the ALJ properly determined that Plaintiff's history of right wrist fracture was non-severe. *Id.*

## B. The *ALJ's RFC* Determination

Plaintiff next argues that substantial evidence does not support the ALJ's RFC determination because the medical evidence established limitations in Plaintiff's ability to use his

18

right hand. The Defendant responds that the ALJ incorporated into Plaintiff's RFC only those impairments and restrictions that the ALJ found credible. Defendant argues that because the ALJ properly discounted the opinions of Dr. Berg and Dr. Mannis regarding the use of Plaintiff's right wrist and properly assessed Plaintiff's credibility, substantial evidence supports the RFC determination. The Court agrees with Defendant.

With regard to Plaintiff's residual functional capacity, "a disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence, including medical records, observations of treating physicians and others, and [claimant's] own description of her limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 404.1545(a)(1).

At the outset, the Court notes that Plaintiff's activities are inconsistent with his allegations of disability, and specifically with his allegation of severe limitations in the use of his right wrist. The record demonstrates that Plaintiff continued to play guitar using his right hand and perform as a musician. Further, he was able to prepare meals, wash dishes, do laundry, repair music equipment, use the computer, and shop. (Tr. 361-68) An ability to engage in a number of daily activities detracts from Plaintiff's credibility. *See, e.g., Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (stating that plaintiff was able to vacuum wash dishes, do laundry, cook, shop, drive, and walk were inconsistent with her subjective complaints and diminished her credibility); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's credibility analysis where the plaintiff took care of her child, drove, fixed simple meals,

performed housework, shopped, and handled money); *Slack v. Astrue*, No. 4:07CV1655 RWS, 2009 WL 723832, at \*14 (E.D. Mo. March 17, 2009) (finding plaintiff's ability to hunt for small game, prepare meals, and do some yard work was inconsistent with allegations that he needed to spend most of the day resting).

Further, as stated above, the ALJ properly considered the medical evidence in determining Plaintiff's RFC. The totality of the medical evidence in the record does not support Plaintiff's allegations that he is limited in his ability to use his right hand due to his prior wrist fracture. The treatment records do not reflect complaints of pain or limitation in Plaintiff's right wrist, other than complaints directly after the accident. Instead, his complaints pertained to those impairments addressed by the ALJ, including congestive heart failure, diabetes, obesity, hypertension, and sleep apnea. (Tr. 25) The ALJ correctly found that no credible, medically-established evidence existed demonstrating any nonexertional limitations such as fingering, handling, reaching, or basic balancing. (Tr. 25) *See McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (affirming the ALJ's RFC finding where the record showed plaintiff rarely sought treatment for the alleged impairment, none of the doctors found her condition disabling, physical exams were normal, and plaintiff could perform many activities associated with daily life). In addition, the ALJ was only required to include in the RFC determination those impairments and limitations the he found credible based upon the entire record. *Id.* at 769. The undersigned thus finds that substantial evidence supports the RFC determination to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 10 pounds frequently and 20 pounds occasionally, with a limitation to doing no more than occasional climbing, stooping, kneeling, crouching, crawling, or bending. Therefore, the Court affirms the final decision of the Commissioner.

20

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social
security benefits is **AFFIRMED**.  An appropriate Judgment shall accompany this Memorandum
and Order.

Dated this $\cancel{6}^{th}$ day of March, 2015.

Bonnie L. White

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**